IN THE TAX COURT OF THE
STATE OF OREGON

MULTNOMAH COUNTY,
a home rule subdivision of the State of Oregon,
by and through its Tax Collector,
Kathleen A. Tuneberg
and its Tax Assessor Robert Ellis

*v.*

DEPARTMENT OF REVENUE,
and Villa St. Clair, Inc.

(TC 4329)

John S. Thomas, Assistant County Counsel, Multnomah County Counsel, Portland, represented Plaintiff (county).

John A. DiLorenzo, Jr., Hagen, Dye, Hirschy & DiLorenzo, Portland, represented Defendant Villa St. Clair, Inc. (Villa).

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, filed an Answer to Second Amended Complaint on behalf of Defendant Department of Revenue.

Decision for Defendant Villa St. Clair rendered February 25, 1999.

## CARL N. BYERS, Judge.

This appeal concerns the method used for increasing the limited assessed value of rehabilitated housing. The Department of Revenue held that the limited assessed value of improvements could not be increased by more than the overall percentage of increase for that class of property. Plaintiff (county) appeals, claiming that the overall percentage of increase may be allocated between land and improvements as the assessor deems appropriate. There is no dispute of material fact, and the matter has been submitted to the court on Plaintiff's Motion for Summary Judgment and Defendant Villa St. Clair, Inc.'s (Villa) cross motion for summary judgment.

## FACTS

Villa is the owner of a multi-family residential property known as Gentry Apartments in Portland. Villa applied for and obtained approval for limited assessment of the property under a program designed to provide incentives for property owners to rehabilitate substandard residential properties. Under ORS 308.450 to 308.481,[1] the assessed value of a

---

[1] All references to the Oregon Revised Statutes are to 1995.

qualifying rehabilitated property is "frozen" for 10 years at the real market value on the roll at the time the owner applied for limited assessment. That provision effectively exempts from taxation, for 10 years, any increase in real market value due to rehabilitation.

Only one exception allows for increasing the limited assessed value. This exception is for general inflationary increases in properties of the same class to maintain uniformity in valuation with other classes of property.

The assessor's ratio study for 1996-97 indicated that the assessed values of multi-family residential properties should be increased 16 percent for land and 9 percent overall. However, for the same year, the assessor's office also reappraised multi-family properties in the subject property's district. The reappraisal determined that the limited assessed value for the subject land was excessive.

There is no dispute in this case with regard to the trending factors indicated by the assessor's ratio study. The dispute arises because the assessor, instead of applying a 16 percent trend to the land value, decreased the assessed value of the land from $292,600 to $245,000. Then, to achieve an overall increase of 9 percent for the property as a whole, the assessor increased the assessed value of the improvements 21 percent (rounded) from $620,300 to $750,500 for a total limited assessed value of $995,500. Villa contends that the improvements could only be increased by the maximum of 9 percent, or to $676,127. When $676,127 is added to the land value of $245,000, the total limited assessed value is $921,127, or only a 1 percent increase overall.

## ISSUE

In trending the value of limited assessment properties, if the value of land is reduced, then may the assessor apply a higher trend to the improvements to achieve an overall uniform trend by class?

## STATUTORY BACKGROUND

The legislature's declared policy is to encourage rehabilitation of substandard housing. ORS 308.453. The legislature authorizes a limited tax levy where the governing

body "adopts" the provisions of ORS 308.450 to ORS 308.481. ORS 308.452. ORS 308.459(1) provides, in relevant part:

"* * * For purposes of ORS 308.232, the assessed value of rehabilitated residential property shall be not more than its real market value as it appears in the last certified assessment roll next preceding the date on which the application for limited assessment is filed * * *."

The statute provides that this fixed or limited assessed value shall continue for 10 consecutive years.

The legislature has provided one exception for increasing the limited assessed value of rehabilitated housing. ORS 308.456(4) provides:

"ORS 308.450 to 308.481 do not apply to increases in assessed valuation made by the assessor or by lawful order of the Department of Revenue or a court, to a class of property throughout the county or any specific area of the county to achieve the uniformity of assessment or appraisal required by ORS 308.232."

This appeal, in part, arises from the nature of the statutory scheme. Land and improvements are separately assessed and the assessment roll shows both a real market value and an assessed value for each. ORS 308.215.[2] A taxpayer may petition to reduce the assessed value of land, improvements, or both. ORS 309.100. If the taxpayer appeals the assessed valuation of only one, either land or improvement, then the court's jurisdiction is thereby limited to the assessment appealed. *See Nepom v. Dept. of Revenue*, 272 Or 249, 536 P2d 496 (1975).

■     While land and improvements must be separately assessed, the increase allowed under ORS 308.456(4) is by "class." That suggests that any increase is made by considering land and improvements as a single property. The question then arises as to how the assessor is to trend property by class and yet make separate assessments for land and improvements.

---

[2] For tax years beginning July 1, 1997, the assessment roll now shows real market value, maximum assessed value, and assessed value for each.

■      Trending is a mass appraisal technique for adjusting assessed values to keep them close to market values. Because it is not practical to physically reappraise every property every year, the assessor's office studies the ratio between assessed value and actual sale prices to determine whether the assessed value of a class of properties is lagging behind or is ahead of the market.

In this case, for 1996, the assessor performed a ratio study of multi-family residential properties of 21 or more units. The study used 36 sales out of some 1,001 accounts. The court notes that there are some wide differences just in the summary information provided. For example, the age of improvements ranges from 1908 to 1995. The ratio of assessed value of land to improvements varied from 1.79 to 19.64 and land sizes varied from 5,000 square feet to 463,043 square feet. These and other differences help account for a range of sales ratios of 60.2 to 111.8. Obviously with these differences, any overall trending factor indicated is a very rough approximation, which may not fit every property. That point is emphasized because the objective in using trending factors is to keep assessed value as close to market value as possible without physically reappraising the property. Consequently, if there are facts or circumstances indicating that a particular property is different from or does not follow the trend, then it will usually be inappropriate to simply apply the trending factor to that property. For example, it would not be appropriate to apply a trend to a property significantly damaged by fire or condemned by the city health inspector just prior to the assessment date.

In this case, the assessor's ratio study showed that land should be increased 16 percent and the property as a whole should be increased 9 percent. This suggests that improvements increased in value less than 9 percent. That can be demonstrated by considering an example where land is assessed at $100,000 and improvements at $900,000 for a total of $1,000,000. If land is increased 16 percent to $116,000 and the overall increase in value is 9 percent or $1,090,000, then of necessity, improvements only increased 8.22 percent to $974,000.

■ ■    It is also apparent that the ratio or relationship between land and improvements will affect the way the percentages are applied. Changing the example, assume land is assessed at $300,000 and improvements at $700,000 for a total of $1,000,000. If land is increased 16 percent to $348,000 and the overall value is increased 9 percent to $1,090,000, then the improvements would be increased only 6 percent to $742,000. It is appropriate that land be adjusted consistently and improvements dependently because, in appraisal theory and logic, land will be uniform whereas improvements may be an over-improvement or under-improvement.

■    If a ratio study indicates that the assessed value of land should be increased 16 percent and improved properties overall 9 percent, then the separate assessed values of land and improvements should be adjusted so that each assessment reflects market value. If applying trending factors results in assessed values in excess of market value, then the taxpayer may appeal and have the assessed value of the land, the improvements, or the total, reduced to real market value. This points out at least one peculiarity of trending the frozen or limited assessed values of rehabilitated housing.

■    After rehabilitation, the limited assessed value no longer represents the market value of that property. Presumably, rehabilitation improvements will increase the property's market value significantly. Consequently, if the assessor increases the limited assessed value by a trending factor, then the taxpayer cannot prove the increase is excessive because there are no longer any relevant market prices. In theory, the assessor is trending the prerehabilitation market value. Apparently, the legislature determined that that was a fair way to maintain uniformity with regard to other prerehabilitated properties.

The assessor erred in applying the overall trend. The subject land had been assessed in excess of its market value. Therefore, even though the ratio study showed that this class of land increased 16 percent, it was not applicable because the land was already in excess of market value. With the land trend removed, the overall trend for the subject could not remain at 9 percent. Where land value is reduced because it

was overassessed, it would never be appropriate to increase improvement values by more than the overall rate. Trending the limited assessed value of $912,900 by 9 percent overall to $995,500 implies that either: (1) the land was not overvalued, which is contrary to the assessor's own findings, or (2) the prerehabilitation improvements were undervalued. Since the statute froze the value of the improvements, overall trending of this property necessarily overassesses the value of the prerehabilitation improvements.

In view of the above, Plaintiff's Motion for Summary Judgment will be denied. In its cross motion for summary judgment, Villa asked for an award of attorney fees under ORS 20.105(1) on the grounds that county had no "objectively reasonable basis" for its claim. Based on the arguments of the parties and the above analysis, Villa's request for attorney fees is denied. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that Defendant Villa St. Clair, Inc.'s cross motion for summary judgment is granted, save and except no attorney fees will be awarded. Costs to Defendant Villa St. Clair.